## HAVRE DE GRACE REAL ESTATE AND POWER COMPANY *vs.* THE MAYOR AND CITY COUNCIL OF HAVRE DE GRACE AND JOSEPH GOOD, Treasurer.

*Contract for Exemption from Taxation of Manufacturing Plant—Municipal Authority—Enforcement of Contract in Equity.*

In 1889 a contract was made between the city of Havre de Grace and one F, by which the latter agreed to establish and maintain in that city a shoe factory of certain dimensions, to operate same continuously to its full capacity for ten years, and to give a mortgage conditioned for his performace of the contract.   The municipality in consideration thereof agreed to pay to F the sum of $25,000 to be used in the construction of the building, to exempt the factory from taxation for fifty years and

to convey a designated lot of ground for the factory building. The factory was erected and subsequently was conveyed to the plaintiff. It had been operated, but not to its full capacity, for eleven years, during which time no taxes were levied upon it. At the time the contract was made it was unauthorized by the charter of Havre de Grace, but the Act of 1890, ch. 180, empowered the city to abate taxes upon real estate actually used for manufacturing purposes, and to contract with the owners of such property for tax exemption for a period not longer than fifty years, and to confirm the contract made in 1889 with F to the same extent to which the city could under the Act make a binding contract. *Held*, that the city was not authorized to contract for the exemption of the F factory from taxation for fifty years on condition that it was kept in operation for ten years, since the Act of 1890 only authorized the city to provide for the abatement of taxes upon property actually used in the business of manufacturing.

*Held*, further, that if the contract be construed as providing for the exemption of the factory from taxation only so long as operated as a factory, the plaintiff, as the present owner of the property, is not entitled to the injunction restraining the collection of the municipal taxes upon it, because the factory had not been operated as a shoe factory continuously to its full capacity for ten years as provided by the contract, and also because the indemnity mortgage to the city called for by the contract had not been executed.

A party who seeks the aid of equity in enforcing a contract must show that he has performed or is ready to perform his own part of it, or set forth adequate reasons why he should be excused from doing so.

When a party has agreed to give to a municipality a mortguge on certain property, the failure so to do is not excused by the fact that the municipality neglected to construct a sewer in pursuance of an independent agreement, not a part of the contract relating to the mortgage.

Appeal from the Circuit Court for Harford County (VAN BIBBER, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*Edward C. Carrington, Jr.* (with whom was *C. Carrington* on the brief), for the appellant.

*Jos. W. Chamberlaine* and *Wm. H. Harlan* (with whom was *Richard Dallam* on the brief), for the appellees.

SCHMUCKER, J.; delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Harford County, in equity, dissolving a preliminary injunction and dismissing the bill upon which it had been granted. The material facts alleged in the bill are as follows:

On August the 14th, 1889, a contract was made between the Mayor and City Council of Havre de Grace of the first part, and John Faust & Son of the second part, by which Faust & Son, who were manufacturers of shoes in Baltimore; agreed to remove their business to Havre de Grace and establish and maintain in that place a shoe factory of certain dimensions within a prescribed time in consideration of the gift to them of certain land and money toward the erection of the factory, and the exemption of the factory when erected with its stock, plant and buildings, from city taxation for fifty years. The contract in addition to reciting the agreement of Faust & Son to erect and equip the factory building, contains these provisions, "They (Faust & Son) further agree that said shoe factory shall be continuously operated to its full capacity for a period of ten years from the date hereof; intending by full capacity to mean that said factory shall run as shoe factories of its size and capacity are ordinarily run, taking into consideration dull seasons, in the shoe trade, repairs to engine, boilers and machinery, strikes, fires or other unforseen and unavoidable causes. They further agree that they will give to said party of the first part ample and satisfactory security in the penalty of twenty-five thousand dollars to faithfully carry out all the provisions of their contract on their part contained."

"The said party of the first part on its part covenants and agrees to pay to said parties of the second part the sum of twenty-five thousand dollars in cash, said cash to be deposited on or before the 15th day of September, 1889, in the First National Bank of Havre de Grace and to be used for the construction of the aforesaid buildings and improvements, to exempt said factory plant and stock, including the real estate used in connection therewith from all city taxes for fifty years;

to have at once conveyed to said parties of the second part in fee-simple and without cost to them all that lot designated upon the plat of said city of Havre de Grace as Square No. One Hundred and Ninety-Seven, to open, grade and pave as the other streets in said city are now improved, the streets bounding on the lot above described; to guarantee that bonds of said party of the second part secured by a first mortgage upon the aforesaid lot and improvements proposed to be by them erected thereon to the extent of fifteen thousand dollars, bearing four per cent interest, will be negotiated at par on or before the first day of December, 1889."

"It is further agreed between the parties hereto that the security agreed upon to be given by said parties of the second part for the faithful performance of their part of this contract shall be an indemnifying non-interest bearing mortgage upon the lot above described and the improvements thereon; the indemnifying mortgage it is understood shall be subject to the fifteen thousand dollar mortgage above referred to."

The bill further alleged that the shoe factory was erected and continuously operated for ten years as provided for in the contract and that the city of Havre de Grace procured the loan of $15,000 on behalf of Faust & Son, who executed a mortgage on the factory and its plant to John G. Johnson in trust to secure the repayment of the loan according to the contract. Faust & Son subsequently formed a corporation called the Faust Schocke Shoe Manufacturing Company and transferred to it all of their shoe business with its real estate, factory and plant and the rights and choses in action set forth in their contract with the city.

The said shoe company made an assignment for the benefit of its creditors on May 9th, 1896, to A. P. McCombs and C. H. Faust, who filed a bill in the Circuit Court for Harford County for the administration of the trust under its supervision. Default having occurred under the $15,000 mortgage of Faust & Son, J. G. Johnson, the trustee therein named, instituted proceedings in the nature of a foreclosure in the same Court and the two suits were consolidated. The shoe

factory with its equipment and contents were sold under the decree in the consolidated cases to S. J. Seneca, who sold and conveyed them to the appellant corporation.

The bill then alleged that the appellant and its predecessors in title had fully complied with the contract between Faust & Son and the city of Havre de Grace, but the latter had levied taxes upon the shoe factory and was about to sell it for their non-payment and prayed for an injunction to prevent the sale and for further relief. A preliminary injunction was granted on the bill.

The city answered the bill admitting that it had attempted to make the alleged contract with Faust & Son, but denying its power to do so and also denying that the contract had been complied with by them or their assigns in that the shoe factory had not been constantly operated to its full capacity for ten years and that Faust & Son had never executed and delivered the indemnifying mortgage provided for by the contract and that the city had thereby suffered great loss. The answer also denied that the plaintiff was an assignee for value of any of the rights or choses in action of Faust & Son or of the Shoe Manufacturing Company or of J. G. Johnson mortgagee, and further denied that the contract between the city and Faust & Son had ever received the requisite municipal ratification required by the Act of 1890, ch. 180, to make it valid and binding. The answer insisted that even if the alleged contract had been valid the failure of Faust & Son and their successors in the ownership of the shoe factory to perform it on their part had disentitled the plaintiff which claimed under them to maintain this suit.

After testimony had been taken by both parties and the case had been heard in due course the Circuit Court by the decree appealed from dissolved the preliminary injunction and dismissed the bill.

The Circuit Court in our opinion correctly disposed of the case as the evidence in the record does not show the appellant to be entitled to the relief prayed for in the bill. At the time of making the contract of August 14th, 1889, the only au-

thority possessed by the city to exempt property from taxa-
tion was that conferred upon it by the Act of 1880, ch. 169
(Local Code, Art. 13, sec. 183), which authorized it to *abate
by general ordinance* any or all taxes levied by its authority
for corporate uses upon. machinery, &c., owned by any indi-
vidual or corporation in the city and "actually employed and
used in the business of manufacturing in said city" or upon
the raw material used, in or the produce manufactured by
such individuals or corporations. That Act evidently conferred
no power upon the city to make the Faust contract.

The Act of 1890, ch. 180, was then passed so amending
sec. 183 of the local law as to authorize the city to pass ordi-
nances for the purpose of inducing the location of factories
and industries within its limits, and for that purpose "to grant
to said factories and industries, financial aid in such manner
as they in their judgment may think will be for best interest
of the city, to provide by ordinance for the abatement of all
or any taxes levied by their authority for any of the purposes
of the corporation upon any mechanical tools or implements,
whether worked by hand or steam, or other motive power,
machinery, manufacturing apparatus or engines owned by any
individual, firm or corporation in said city; and *which shall be
actually employed and used in the business of manufacturing in
said city*, and upon any of the raw materials or stock owned
and used by said individuals, firms or corporations in and for
the purpose of the manufacturing business in which they are
engaged and not kept or offered or intended to be offered for
sale in its said raw or manufactured conditions, and upon all *real
estate actually used and occupied for said manufacturing pur-
poses*, and it shall be the duty of the clerk of said city to make
such abatement of taxes levied as aforesaid, as may be au-
thorized and directed by said Mayor and City Council," and
they are authorized and empowered to contract with the own-
ers of such property to exempt it from municipal taxation for
a period of not longer than fifty years and "to ratify and *con-
firm any contract made* by the said corporation during the
year eighteen hundred and eighty-nine with the firm of

Faust & Son, to induce them to locate the shoe factory in said city *to the same extent to which said Mayor and City Council could under this section have made a valid and binding contract with said firm.*"

By the express terms of this Act the city was thereby authorized to confirm the existing contract with Faust & Son only to the same extent that it would have been authorized under the Act to have made a new one with them. As we have seen, the only authority conferred by the Act upon the city in reference to exemption from taxation was to provide for the abatement of taxes upon property "actually used in the business of manufacturing in said city." It was therefore beyond the power of the city by any form of ratification to give validity to the exemption, which was attempted to be made by the present contract, of the Faust factory and plant from taxation for fifty years on condition that it was to be kept in operation for ten years.

Even if we construe the contract as having been intended to exempt the factory and plant from taxation only so long as it should be actually used and operated as a shoe factory the record shows that Faust & Son failed to perform their part of the contract in several material particulars. The city procured the lot of ground mentioned in the contract to be conveyed to Faust & Son free of cost to them and paid them the $25,000 in cash and secured for them the mortgage loan of $15,000, at 4 per cent, but Faust & Son never gave to the city the indemnifying mortgage which was distinctly called for by the contract, and they failed to continuously operate the shoe factory to its full capacity for ten years. The evidence shows that although the factory was operated, after its start in 1890, during the four years that Faust & Son continued to own it, to what may fairly be regarded as its full capacity employing from 160 to 170 operatives exclusive of office force and salesmen, yet as soon as it passed into the hands of the Shoe Manufacturing Company the force was somewhat reduced and after the assignment for the benefit of creditors had been made, and the trustees had worked up the stock in hand and

filled the outstanding contracts, the factory came to a stand-
still.    After the appellant acquired the property the manufac-
ture of shoes was so greatly reduced that it employed less
than one-half of the number of operatives with which the
factory had started under the contract, and portions of the
buildings were leased for other purposes and by the year 1900
the manufacture of shoes on the premises had entirely ceased.
The testimony shows that other manufacturing operations
were conducted by the lessees of the appellant in some of the
factory buildings, but that does not constitute a performance
of the contract of Faust & Son, who were conducting a
known shoe manufacturing business in Baltimore, that they
should move that business and its shoe factory to Havre de
Grace and continuously operate the factory to the full capacity
of specified buildings for at least ten years.

It was testified on behalf of the appellants without objec-
tion that Faust & Son had assigned as their reason for not
giving the indemnity mortgage to the city that the latter had
failed to construct a sewer according to the understanding
between the parties which the contract failed to mention, but
that forms no adequate reason under the circumstances of this
case for their refusal to execute and deliver the mortgage.
They had executed the contract in its present form without
objection and had accepted under it from the city the $25,000
in cash and the lot of ground and all of the other benefits
which it secured to them and they cannot be heard to refuse
compliance with its terms upon the ground that it was not the
true contract.    A party to a contract or one claiming under
him who seeks the aid of a Court of equity in enforcing a
compliance with its terms must show that he has fully per-
formed or is ready to perform his own part of it.    This has
been repeatedly decided in reference to bills for specific per-
formance of contracts.    *Oliver* v. *Palmer*, 11 G. & J. 446;
*Carswell* v. *Walsh*, 70 Md. 507; *Bamberger* v. *Johnson*, 86 Md.
41, and it should apply with equal force to a bill like the
present one for an injunction to prevent the threatened viola-
tion of a contract.    In *Oliver* v. *Palmer, supra,* it is declared

to be one of the oldest and soundest principles of equity "that he who goes into a Court of chancery invoking its interposition in his behalf, must allege in his bill that he has done, or has offered to do, or is ready and willing to do all on his part that is necessary to entitle him to the relief which he seeks, or he must set forth adequte reasons why he should be excused from doing so."   No understanding or agreement as to the construction of a sewer is set up in the bill in this case. The contract which is set up in the bill as the foundation of the plaintiffs' right to relief contains on its face a positive undertaking on the part of Faust & Son to give this indemnity mortgage and no reason for or explanation of their failure to do so appears in the bill.

Furthermore it appears from the evidence that the city in fact omitted to tax the property in question for eleven years which covered the entire time that it was employed as a shoe factory.

The reasons which we have assigned for affirming the action of the lower Court in dismissing the bill are so conclusive in their character that we do not notice the other defenses set up by the answer of the appellee.

*Decree affirmed with costs.*

(Decided June 21st, 1905.)