This conflict is between the two complainants, Yaskell and Amster, each of whom demands from Dr. Tenney, the defendant, a conveyance of certain land in East Orange. Mr. Yaskell was the tenant of Dr. Tenney under a lease which, in the event Dr. Tenney should receive a satisfactory offer for the purchase of the premises, gave Yaskell "the right for a period of five days after written notice to him, to purchase the said premises upon the same terms and at the same price."
On December 12th, 1945, Dr. Tenney agreed to sell the property to Mr. Amster for $30,000, provided Yaskell did not elect to take the property. The price was payable part in cash, the balance by taking title subject to the mortgage which was then a lien on the land. On December 18th, Mr. Herman E. Hillenbach, a counsellor-at-law, acting in behalf of Tenney, dictated a letter to Yaskell and read it to him over the telephone: "Your landlord, Dr. Albert S. Tenney, has received a bona fide offer in the amount of $30,000 cash for the purchase of the land upon which your premises are located, subject to your lease. Under the terms of the lease, you have the privilege of meeting this offer in writing within five days. If Dr. Tenney does not hear from you within the five days, he will be free to accept the offer which has been made." Thereupon, Yaskell informed Hillenbach that he had already sent his check to Tenney as a deposit on the purchase of the land and that Hillenbach need not mail the letter to him. He added that whatever offer was made for the land, he would meet it, as he had invested a large sum in the property during his tenancy.
Tenney had been trying to sell the land for some months through sundry brokers. One of the brokers, Mr. Bahrenburg, of Fiedler, Inc., had called on Yaskell and told him of the price that Tenney wanted, $30,000. He also informed *Page 337 
him of the mortgage which was in the sum of $18,550 payable on demand. Yaskell said he would buy, if he could make a satisfactory arrangement with the mortgagees. Bahrenburg next got in touch with the mortgagees and obtained their informal approval of payment of the mortgage in monthly installments of $350 with interest at 5 per cent. until the mortgage were reduced to $15,000, and thereafter interest at 4 1/2 per cent. The same day, December 17th, Bahrenburg reported on this interview to Yaskell who was content with the mortgage proposal. So he paid Bahrenburg $500 on the purchase price, and took a receipt which Bahrenburg prepared and which reads as follows:
"Received from Adams Yaskell check in the sum of $500.00, as and for deposit on the purchase price of premises known as 650 Central Avenue, which premises are partly located in the City of East Orange and partly in the City of Orange, County of Essex and State of New Jersey. Total purchase price $30,000.00. Balance of the purchase price to be paid as follows:
Additional deposit on signing contract ................ $2,500.
Cash at closing ....................................... 8,450.
By assuming first mortgage now on property and held
 by Smith, Perry Rice .............................. $18,550.00
 ___________
Total ................................................. $30,000.00

"It is understood that we are to have an agreement from the mortgagees that the present mortgage on said property will stand under the following terms:
"$350.00 to be paid each month, plus interest at 5% until the mortgage is reduced to $15,000.00 then the monthly payments shall remain at $350.00 per month, but interest is to be reduced to 4 1/2% on the unpaid balance until the mortgage is fully paid.
"This deposit is taken subject to the approval of the owners and also subject to the approval of Smith, Perry Rice, first mortgagees as set forth above and in the event this offer is not accepted by the owners and the conditions not agreed upon by the mortgagees, this deposit is to be returned in full."
A day or so after, Bahrenburg turned over to Tenney Yaskell's check for $500 and a duplicate of the receipt. Tenney, deeming Yaskell's offer substantially the same as Amster's, and believing that Yaskell was entitled to the land, mailed back Amster's check which had been given as a deposit on December 12th. Amster, however, refused to accept the return of his check. There were no further developments for *Page 338 
several weeks and eventually Amster and Yaskell each filed a bill for specific performance. The two cases have been consolidated.
Tenney, upon entering into a contract to sell the land to Amster, became a trustee holding the legal title for Amster's benefit. King v. Ruckman, 21 N.J. Eq. 599. He could do nothing to defeat Amster's title; he could not, as against Amster, enlarge Yaskell's option contained in the lease. Since Amster is first in time, so his right is superior to Yaskell's, except to the extent that Yaskell derives his title from the option. Yaskell cannot defeat Amster on the theory that he is a purchaser for value without notice, for he has not paid the purchase price but has only made a deposit of $500 on account.Haughwout v. Murphy, 22 N.J. Eq. 531 (at p. 546); McVoy
v. Baumann, 93 N.J. Eq. 360 and 638; Miller v. Headley,109 N.J. Eq. 436; 112 N.J. Eq. 89.
Yaskell, by the terms of the lease, was entitled to written notice of Amster's offer. In his telephone conversation with Hillenbach, he waived this right and accepted oral notice as sufficient. He thereupon had five days, or until December 24th, and no later, to meet Amster's offer. At the time of his dealing with Bahrenburg and until he heard from Hillenbach the following day, Yaskell was entirely ignorant of Amster's offer. When he did learn of it, he considered that his own offer was its equivalent, and so let it stand. The effect is the same as if Yaskell had acted after he had been notified of Amster's offer.
Coupling the lease and Amster's offer, it appears that Yaskell had an option to buy for $30,000, payable part cash and the balance by taking title subject to the mortgage. Yaskell's acceptance was conditional upon the mortgagees' consent to certain terms. This, on its face, was not such an acceptance as would create a contract. It would seem to follow that to uphold the sale to Yaskell requires an enlargement of the right given him by the lease and infringes the prior right of Amster. But it further appears that the mortgagees had already orally agreed to the terms which are set out in Yaskell's acceptance. The time for payment of a mortgage can be extended and the rate of interest amended by a parol *Page 339 
agreement. Tompkins v. Tompkins, 21 N.J. Eq. 338; Sharp v.Wyckoff, 39 N.J. Eq. 376. But the agreement must be supported by a consideration. Kruger v. Mark, 135 N.J. Eq. 1. The mortgagees, in order to induce Yaskell to purchase the property, promised to recast the mortgage. A sufficient consideration is found in Yaskell's agreement to buy the property. Van Syckel v.O'Hearn, 50 N.J. Eq. 173. Let me add that the mortgagees do not attempt to avoid their promise but are still ready to extend the mortgage. There was no real condition attached to Yaskell's contract with Tenney, inasmuch as the approval of the mortgagees had already been obtained. Yaskell's agreement to buy was, in substance, on the same terms as Amster's offer.
I conclude that Yaskell is entitled to a decree of specific performance, while Amster's bill must be dismissed.