OPINION
{¶ 1} Appellant, Hotel Innovations, Inc. ("Innovations"), appeals from the judgment of the Common Pleas Court of Montgomery County following a bench trial, wherein the court found in favor of Appellee, MTH Real Estate, LLC, ("MTH"), on Innovation's claims of breach of contract and fraud. *Page 2 
 {¶ 2} The following facts underlying this appeal are set out in the trial court's July 11, 2006 decision and verdict; they are not in dispute:
 {¶ 3} "In April of 2004, Gera Zavakos, a real estate agent for Keller Williams, was contacted by George Panagouleas, the principal of Hotel Innovations, to sell the property and apartment complex at 2358-2366 Patterson Boulevard, Kettering, Ohio.
 {¶ 4} "The property was listed in the MLS and quickly drew several offers. On May 5, 2004, prior to any formal offer to purchase, Mrs. Zavakos, Mr. Panagouleas, Mr. Thomas (the owner of MTH) and Mr. Mantica (Mr. Thomas's realtor) walked the property and specifically discussed that the area behind the retaining wall was not included in the sale.
 {¶ 5} "Mr. Thomas made his offer verbally, and Mr. Mantica went to his office and filled in a Dayton Area Board of Realtors standard Commercial Contract to Purchase. The principals subsequently signed the contract for its listing price of One Million One Hundred Fifty Thousand Dollars, ($1,150,000). The contract also referenced `Addendum #2 3.'
 {¶ 6} "The relevant part of Addendum #2 states that, `Purchaser to agree to lot split size prior to closing all new legal descriptions recording fee's [sic] are at sellers [sic] expense: see attached plot plan on agreed split.'
 {¶ 7} "The first part of Addendum #3 is captioned `Sellers list of work to be done prior to closing' and lists certain repair or improvement items. The addendum continues with `clarification items,' the second of which states: `In terms of "land area" to be defined and split off — it shall be done by Norfleet Brown Petkowicz Engineering and seller is obligated to pay all costs. Buyer and seller understand if for any reason City of *Page 3 
Kettering denies the lot split this sale shall be completed as agreed. The value of the apartment complex was based upon its cash flow stream.'
 {¶ 8} "Although the Contract said the closing would be `on or before October 15, 2004,' Paragraph D of Addendum 3 provides, `closing to be held on or before June 15th with automatic extension not exceeding July 30th, if necessary, for construction work or lot split approval by City of Kettering.' At some point in time, `July 30' was crossed out, and `upon completion' was inserted and Mr. Panagouleas and Mr. Thomas initialed the change.
 {¶ 9} "The closing was held on October 11, 2004, at the offices of Chicago Title Insurance Company. The HUD closing document shows that the owner purchased title insurance with $1,150,000 in coverage. On the day of the closing, the parties signed Addendum No. 4.
 {¶ 10} "Addendum No. 4 includes a site map which contains the notation, with both parties' initials, that `Mr. George Panagouleas Hotel Innovations, Inc. will keep all highlighted areas.' It also contains the notation that, `Mr. and Mrs. Thomas gets [sic] 1 foot behind retaining wall. Hotel Innovations, Inc. and or George Panagouleas to provide to Thomas's "cross easement agreement" in perpituity (sic) for access to 2358-2366 Patterson Blvd. apartments on thru Adirondack Trail, City of Kettering, Ohio. Platting and or lot split to be completed by 9 months from day of closing. If platting lot split is not completed at that time then parties must agree to an extension until completed.'
 {¶ 11} "This provision is signed and dated by the parties and followed by yet another signed and dated provision that `It is further agreed between buyer seller, *Page 4 
(Buyer Thomas) (Seller Panagouleas) that once the lot split is completed buyer will convey back to seller by deed the area shown here in yellow.'"
 {¶ 12} In July 2005, MTH filed a complaint against Innovations alleging breach of contract and warranties as a result of asbestos being present in the apartment buildings. This claim was subsequently settled and dismissed prior to the trial. However, Innovations filed a counterclaim alleging breach of contract by MTH for failing to reconvey the .59 acre parcel behind the property in accordance with the parties' agreement. Innovations argued that the contract expressly conditioned the sale of the property on the reconveyance of the parcel, and that MTH breached the contract when it refused to reconvey the parcel at Innovation's request. Innovations further asserted that MTH never intended to reconvey the lot. To remedy the situation, Innovation demanded that MTH specifically perform its obligation under the contract and convey the .59 acre parcel. In the alternative, Innovations requested the value of the parcel or a lease in perpetuity for a nominal fee ($1).
 {¶ 13} MTH, on the other hand, contended that the contract, specifically Addendum #4, required Innovations to complete the lot split within nine months of the closing date. Because Innovations failed to do so, MTH argued that it had no obligation to reconvey the property. Furthermore, because this condition to the contract was not fulfilled, MTH asserted that its refusal to reconvey the property could not amount to a breach.
 {¶ 14} This matter went to trial on June 5, 6, and 29, 2006. After hearing testimony from both sides, the trial court entered its decision and verdict in favor of MTH on the claims of breach of contract and fraud. According to the court, Addendum #4 to *Page 5 
the contract was ambiguous because it failed to assign a definite period of time in which the lot split could be completed. The court then concluded that two years was a reasonable amount of time for Innovations to complete the lot split and tender performance. Moreover, the court held that MTH had not breached the contract as of the date of the trial because up to that point, "there ha[d] not been a subdivision of the land or even an application by the seller (Panagouleas) to Kettering." (Decision and Verdict at 6.) The court opined that the burden to accomplish the lot split was on Innovations, and not MTH. Thus, Innovations could not assert that there was a material breach of the contract when it had failed to satisfy the condition that would compel MTH's obligation. It is from this decision that Innovations has timely appealed.
 {¶ 15} On appeal, Innovations raises the following two assignments of error:
 {¶ 16} "The Trial Court Erred By Failing To Award Judgment To The Appellant Based Upon The Doctrine of Impossibility Of Performance."
 {¶ 17} "The Trial Court Erred By Failing To Award The Appellant Judgment For Breach Of Contract Granting Damages And/Or Conveyance Of The .59 Acre Parcel In The Form Of A 99 Year Lease."
 {¶ 18} Upon review of the record, we find that the trial court did not err in rendering judgment in favor of MTH on the claims of breach and fraud. Because Innovations failed to apply for and obtain a lot split in accordance with the terms of the parties' contract, it cannot argue that a presumptive denial by the City of Kettering made its performance impossible. Likewise, until Innovations satisfied its contractual obligation, MTH had no duty to perform under the contract and convey the .59 acre parcel. Therefore, the judgment of the trial court will be affirmed. *Page 6 
 I {¶ 19} In its first assignment of error, Innovations argues that the doctrine of impossibility of performance prevented it from fulfilling its obligation under the contract, since Kettering would not approve a lot split of the .59 acre parcel. "`Impossibility of performance is an affirmative defense to a breach of contract claim. Impossibility of performance occurs where, after the contract is entered into, an unforeseen event arises rendering impossible the performance of one of the contracting parties.'" Hiatt v. Giles, Darke App. No. 1662,2005-Ohio-6536, at ]}34, quoting Skilton v. Perry Local School Dist. Bd.of Educ, Lake App. No. 2001-L-140, 2002-Ohio-6702, at ?26. We note, however, that Innovations has not pleaded or raised the issue of impossibility of performance at the trial court level. As a result, this issue has been waived. See id.
 {¶ 20} Nevertheless, if the issue of impossibility of performance had not been waived, we would reject its application in this matter. To assert the doctrine of impossibility of performance, a party must show "`that an unforeseeable event occurred, that the non-occurrence of the event was a basic assumption underlying the agreement, and that the event rendered performance impracticable.'" Settles v. Invesco RealEstate Partnership (Dec. 4, 1989), Butler App. No. CA89-03-047,1989 WL 145968, at *2. Here, Innovations claims that the unforeseeable event making its performance under the contract impossible is Kettering's refusal to approve the lot split. However, the record does not demonstrate that this unforeseeable event occurred. At the trial, George Panagouleas testified that he had not submitted an application with Kettering to have the .59 acre parcel split. In fact, Panagouleas stated that a lot split *Page 7 
was merely a stipulated part of his and Mr. Thomas's "gentlemen's agreement." Instead, he asserted that a variance to change zoning from multi-family use to single-family use was all that was necessary to facilitate his personal use of the parcel. Panagouleas further provided that he had hired a surveyor and an architect to sketch a legal description of the property and help achieve the lot split, but by the time of trial, no legal description had been created. Ronald Hundt, a city planner for the City of Kettering, reiterated Panagouleas's statements that no application or legal description of the property had been submitted to Kettering for the purpose of a lot split. And, according to Hundt, without a lot split, no additional living structure can be erected on the site.
 {¶ 21} In light of this evidence, we find Innovations' argument regarding legal impossibility to be unpersuasive. The record does not reveal that the event, i.e., denial of Innovations' application by the City of Kettering to split the .59 acre parcel, occurred rendering Innovations' obligation to perform impracticable. Thus, Innovations' first assignment of error is overruled.
 II {¶ 22} Innovations contends under its second assignment of error that the trial court erred in not awarding damages and/or a conveyance of the .59 acre parcel in the form of a 99 year lease for MTH's breach of the contract. According to Innovations, conveyance of the parcel was to occur at some point in the future, in accordance with Addendum No. Four, after an engineer had prepared a new legal description of the property. Innovations further asserts that it employed an engineer and surveying *Page 8 
company to accomplish this task, and thus, it satisfied its contractual obligation.
 {¶ 23} In addressing this issue after the trial, the court made the following conclusions:
 {¶ 24} "The evidence is that there has not been a subdivision [lot split] of the land or even an application by the seller (Panagouleas) to Kettering. There is no evidence that the buyer (Thomas) did not intend to re-convey the land or that he made any false statements. While there is an obligation on the buyer to cooperate and not interfere with the efforts of the seller to obtain the lot split, there is no written or oral obligation on the buyer to do anything proactively to accomplish the lot split.
 {¶ 25} "The purpose of the questioned part of the contract was to transfer back the .59 acre when and if there were a lot split. Since there has been no such subdivision, or even an application by the seller, there has not been, as of the date of trial, any material breach of the contract * * * ." (Decision and Verdict at 6-7.)
 {¶ 26} We agree with the trial court and reaffirm the proposition of law on which its conclusions stand: "It is a settled principle of contract law that, in the case of mutually dependent promises, neither party is obligated to perform or is in default until the promise of the other is performed or the other party tenders performance." Young v.Brookshire Village Properties (1995), 101 Ohio App.3d 458, 461, 655
N.E.2d 1329, citing Raudabaugh v. Hart (1899), 61 Ohio St. 73, 87-88, 55 N.E. 214. In conjunction with our discussion of the first assignment of error, we find the record does not demonstrate that Innovations performed its duty under the contract. As we stated above, George Panagouleas testified at trial that he had not submitted an application for lot splitting with the City of Kettering, nor had a legal description of the parcel been *Page 9 
created by the time of trial. These facts were confirmed by one of Kettering's city planners, Ronald Hundt. The primary intention of the parties appears from the contract to be that MTH would convey the .59 acre parcel when Innovations obtained a lot split. With this in mind, Innovations' argument that MTH is now in breach of the contract, where no lot split has been obtained and no evidence of some type of repudiation has been presented, is premature. Accordingly, Innovations' second assignment of error is overruled.
 {¶ 27} The judgment of the trial court is hereby affirmed.
 WOLFF, P.J., and FAIN, J., concur. *Page 1